This suit results from an intersectional collision between a Ford sedan, owned and operated by the plaintiff, and a taxicab, owned by the defendant Toye Bros. Yellow Cab Company and, at the time of the accident, driven by its employee, Herbert Schussler. The accident occurred in the City of New Orleans, on the night of October 27, 1939, at about 7:05 p.m. at the corner of Willow and Upperline Streets, and resulted in damaging the automobile of the plaintiff, Archie J. Terrebonne, to the extent of $144.45, for which sum judgment is prayed for against Toye Bros. Yellow Cab Company and the individual members of the partnership.
The defendants denied all responsibility for the accident.
There was judgment below in defendants' favor dismissing plaintiff's suit and he has appealed to this court.
The charges of negligence reciprocally imputed to the drivers of the colliding vehicles are substantially the same and consist of the statement that they were not maintaining a proper lookout, did not have their vehicles under control in entering the intersection, and excessive speed.
The plaintiff's Ford automobile was being driven down Willow Street in the direction of Napoleon Avenue, while the taxicab was proceeding out Upperline Street towards Lake Pontchartrain. There is a large house on the river corner of Willow and Upperline Streets and several trees which obstruct the view of drivers of vehicles approaching that intersection. It is referred to in the testimony as a "blind corner". The intersecting streets appear to be of equal dignity, but since the taxicab was approaching from Terrebonne's right it would have the right of way. (Article V, Section 15, paragraph "a" of Traffic Ordinance No. 13,702 of the Commission Council Series.)
There were seven eyewitnesses to the accident, two of whom testified for the plaintiff and five for the defendants.
Plaintiff's version of the accident is that he reached the intersection first and was driving slowly across when he was struck by the taxicab which was going very fast, with the result that his car was turned over, because of the violence of the impact, and came to rest about five feet beyond the intersection, in the direction of Napoleon Avenue. He stated that he saw the taxicab for the first time when it was thirty feet from the intersection at a time when there was no opportunity to prevent the accident. He is corroborated in many respects by Agnes Idell, a domestic servant, who happened to be in the vicinity at the time of the accident. She stated that the Terrebonne car was going slowly and the taxicab very fast and that the Terrebonne car reached the intersection first.
Herbert Schussler, the driver of the taxicab, testified that he was traveling out Upperline Street at about fifteen miles per hour, which he reduced to eight miles as he approached the intersection and to five or six as he entered it; that he looked in both directions and that when within a few feet of the middle of Willow Street, he saw the Terrebonne car coming towards him at the rate of thirty-five or forty miles per hour, whereupon he immediately applied his brakes and stopped his car. He estimates the distance between the Terrebonne car and his taxicab when he first saw it, as fifteen or twenty feet. Schussler is corroborated by four of the five young men who were in his cab, some of whom were in a better position to observe the accident than others, because of the way they were seated, to wit, Dan Scharff, Jr., Oscar Levy, Jr., Jennings Herty and Ronald Durning.
The statement of plaintiff to the effect that he was in the middle of the intersection, driving at the rate of fifteen miles per hour, when he first saw the taxicab thirty feet away in Upperline Street, is not convincing since it appears from the testimony that Upperline Street is only twenty-two feet wide at its intersection with Willow Street and it would seem that Terrebonne would have been able to drive one-half of that distance or eleven feet and clear the intersection before the taxicab could get to it. Certainly that would be the case if the colliding vehicles had been traveling at anything like equal speed. According to the passengers in the taxicab it had slowed down to about six miles per hour when it entered the intersection. If this be true, and we see no reason to doubt it, the cab was going much slower than the admitted speed of the Ford.
Terrebonne was on his way to the Baptist Hospital to see his wife, who was a patient in that Institution at the time. Schussler declares that Terrebonne told him after the accident that he was already thirty minutes late in getting to the *Page 226 
hospital, from which the inference is drawn by counsel that Terrebonne's anxiety to get to the Hospital as soon as possible induced him to drive at an excessive rate of speed. Terrebonne denies that he made the statement, but whether he did or not we are convinced that he was driving too fast. If the intersection was a blind corner, there was need of more caution and less speed in approaching it. The evidence clearly preponderates to the effect that the taxicab approached very slowly and cautiously. It had the right of way which had not been removed by pre-emption of the intersection by the Ford which, at best, arrived at the intersection about the same time as the taxicab.
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.